# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally-recognized Tribe, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | CIV 10-019-JHP |
| BRAD HENRY, Governor of Oklahoma,<br>W.A. "DREW" EDMONDSON, Attorney<br>General of Oklahoma, THE OKLAHOMA<br>TAX COMMISSION, THOMAS KEMP, JR.,<br>Chairman, Oklahoma Tax Commission,<br>JERRY JOHNSON, Vice Chairman,<br>Oklahoma Tax Commission, and<br>CONSTANCE IRBY, Secretary, Oklahoma<br>Tax Commission, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## ORDER

Now before the Court is Plaintiff's Motion for Preliminary Injunction, Defendants' Responses to said motion and Plaintiff's Reply. The Court conducted a hearing on this matter on March 11, 2010. After consideration of the entire record, including the testimony and exhibits presented at the hearing, the court concludes Plaintiff has failed to provide a valid basis to warrant injunctive relief at this time.

Plaintiff seeks a preliminary injunction restraining and enjoining Defendants from "enforcing certain provisions of its tax codes within Plaintiff's Indian country that (1) impermissibly burden Indian commerce by unilaterally imposing restrictions on the sale of cigarette and tobacco products in Indian country and (2) interferes with Plaintiff's sale of cigarette products manufactured, marketed, and sold in the stream of Indian commerce ("Native Manufactured" products.)." (Plaintiff's Motion at 1).

**I. BACKGROUND**

In February, 1995, the Nation and the State of Oklahoma entered into a tobacco Compact. The Compact expired in 2005. Plaintiff alleges a new Compact has not been negotiated due in part to a disagreement between the parties concerning the treatment of Native Manufactured cigarettes.

In 2004, while the Compact was still in force, the State legislature enacted the "Oklahoma Tobacco Master Settlement Agreement Complementary Act" ("the Complementary Act") codified at Okla. Stat. tit. 68, §360.1 et seq. The Complementary Act requires tobacco manufacturers to submit an annual certification to the Oklahoma Tax Commission ("OTC") and Attorney General demonstrating that it is in compliance with the Escrow Statute. The State publishes a list ("State Directory") of all manufacturers qualified to sell tobacco products. Manufacturers not appearing on the State Directory cannot sell tobacco products in the State.

On June 2, 2009, Defendant Governor Brad Henry signed ESB 608 ("SB 608") into law. The new law, which amends the regulatory scheme applicable to taxation of tobacco products, is not of general application but, rather, concerns only taxation of cigarettes sold by non-compacting Tribes in Indian country. See Okla. Stat. tit. 68, §346 et seq. and §349.1.

Under the new law, (1) all cigarette and other tobacco product sales within the Nation's Indian country are subject to State excise taxes; (2) all cigarettes, including those sold by the Nation or its licensees, must bear a stamp issued by the State evidencing that the cigarettes are tax free, or that the State tax has been paid; (3) all Nation licensed retailers must purchase cigarettes and tobacco products only from State licensed wholesalers; (4) any person who knowingly ships, transports, receives, possesses, sells, distributes, or purchases cigarettes without a State tax stamp or tax free stamp is guilty of a State misdemeanor subject to a $1,000 fine[1] and (5) the state may seize a licensed retailer or wholesaler's property for the sale of unstamped cigarettes.

---

[1] A second offense is a felony with a $5,000 and/or up to 2 years in jail penalty under State law.

Plaintiff contends on February 10, 2010, Defendants seized more than $83,000 of cigarettes en route to Nation licensed retailers located within the Nation's Indian country. Defendants are actively enforcing SB 608. Plaintiff argues the Nation's wholesale business, its employees, and those under its jurisdiction as tribally licensed retailers are at imminent risk of unlawful State prosecution. Further, it is Plaintiff's contention the State has taken action against members of the Nation or those licensed by the Nation through this unlawful seizure of property destined for the Nation's Indian country, and without the preliminary relief requested herein the Nation will suffer irreparable harm.

## II. DISCUSSION

"Injunction is a drastic remedy to be exercised with caution, and should be granted only in cases where the necessity therefore is clearly established." *Goldammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964); see also, Salt Lake Tribune Publ. Co. v. AT&T Corp., 320 F.3d 1081 (10th Cir. 2003)(The right to relief must be clear and unequivocal because a preliminary injunction is an extraordinary remedy. )*. The following four factors must be examined by the court on a motion for preliminary injunction:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

*Salt Lake Tribune Publ. Co. v. AT&T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003).*

### A. Substantial Likelihood of Success on the Merits

In the instant case, Plaintiff has not shown a substantial likelihood of success on the merits. Plaintiff asserts that the State of Oklahoma is interfering with its "Nation to Nation" purchase of cigarettes from "Native Manufacturers". "Nation to Nation" and "Native Manufacturers" are terms created by Plaintiff. A Native Manufacturer was described as a manufacturer located on tribal land, even tribal land held by non-federally recognized tribes outside the United States. According to Plaintiff, a Native Manufacturer can be an individually owned, private for profit corporation, so long as its owner is a member of a Tribe. In its Complaint and in its Motion for Preliminary Injunction, Plaintiff did not identify any "Native Manufacturers"

other than in the affidavit of Jo Coleman, filed in connection with its Preliminary Injunction. In the affidavit it was asserted by Ms. Coleman that the State of Oklahoma seized Seneca brand cigarettes with an invoice value of $83,490.00.

Seneca brand cigarettes are manufactured in Canada by Grand River Enterprises, a private for profit Canadian corporation.[2] In *Grand River Enterprises Six Nations Ltd. v. Pryor*, 425 F.3d 158, 174 (2nd Cir. 2005) the Second Circuit Court of Appeals emphasized that the Indian Commerce Clause "extends only to activities occurring in 'Indian country,' i.e., Indian lands within the territory of the United States." The Court found that imposition of an escrow obligation on Grand River Enterprises for its cigarette manufacturing in Canada did not run afoul of the Indian Commerce Clause. *Id*.

Plaintiff's witness testified that the "Seneca" cigarettes it purchases do not come from Grand River Enterprises in Canada, but come from Lake Erie Tobacco Company. Evidence as to who owns Lake Erie Tobacco Company, whether its owner is a Tribal member and whether it is located on the Seneca Reservation of New York was inconclusive, at best.[3] However, there is no dispute that Lake Erie Tobacco Company is not operated by the Seneca Nation of New York.

As noted by Defendants, even if the owner of Lake Erie Tobacco is a Seneca tribal member, it is a well settled general rule that a corporation is a legal entity distinct from its individual members or stockholders. *Alexander v. Cosden Pipeline Co.*, 63 F.2d 663, 664-65 (10th Cir. 1993); *See also Kaiser v. Bowlen*, 455 F.3d 1197, 1208 (10th Cir. 2006). Due to the distinction between a corporation and its individual members and stockholders, it has been determined that an incorporated business entity cannot argue that it should be considered an enrolled member of an Indian Tribe simply because its sole shareholder is a member.

---

[2] Although, the testimony at the hearing mentioned other "Native Manufacturers," the only alleged enforcement action taken by the State of Oklahoma was the seizure of Seneca Brand cigarettes.

[3] The Nation's Tax Commissioner, Dana Johnson, relied on tourist maps such as the Nation's first photo exhibit (Plaintiff's Exhibit 2D(1)), and highway signs to establish Grand River Enterprises was located on the Seneca Reservation.

*See Baraga Prds., Inc. v. Comm'r*, 971 F.Supp. 294, 296 (W.D. Michigan 1977); *See also Ariz. Dept. of Revenue v. Blaze Cosntr. Co.*, 526 U.S. 32, 34 (1999).

In fact, a "corporation is not an 'Indian' for purposes of immunity" from the application of state law. *Baraga Prds., Inc.*, 971 F.Supp. At 298. The only manner in which an incorporated business entity is entitled to the same sovereign immunity as an Indian Tribe "is when it is organized under tribal laws; it is controlled by the Tribe, and it is operated for government purposes." <u>Id</u>. at 296. Since Lake Erie Tobacco Company does not operate as an arm of the Seneca Nation of New York, it is not entitled to any claim of immunity from state regulation that the Seneca Nation of New York might be able to assert, if any. *See Baraga Prds., Inc.*, 971 F.Supp. at 296.

"What Plaintiff ultimately seeks in this case is something that no other sovereign has — the ability of a Tribe to immunize goods made within its borders from taxation and regulation by other sovereigns once those goods leave its boundaries. Just as China or New York State may not decree that their products are immune from Oklahoma taxation when those goods enter this State, neither may a Native American tribe claim such special treatment." (Defendant's Br. at 2). The Supreme Court has repeatedly emphasized that Native American tribes do not have "supersovereign authority to interfere with another jurisdiction's sovereign right to tax" activities within its borders. *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 466 (1995); *see also Rice v. Rehner*, 463 U.S. 713, 733 (1983)("Congress did not intend to make tribal members 'super citizens' who could trade in a traditionally regulated substance free from all but self-imposed regulations.")

Moreover, the Supreme Court has repeatedly held that Native American immunities from state taxation and regulation only extend to commerce *within* a particular tribe, not to commerce *among* different tribes or their members. *See, e.g., Rice v. Rehner*, 463 U.S. at 720 & n.7 (State may require tribal retailer to obtain state license for sales to "all non-Indians and all Indians who are not members of the particular tribe" to which the retailer belongs.); *Washington v. Confederated Tribes of the Colville Reservation*, 447 U.S. 134,

160-61 (1980)(State may tax and regulate tribal sales to members of other tribes); *see also Duro v. Reina*, 495 U.S. 676, 686-87 (1990)(Tribal tax immunity "does not apply to taxation of "inter-tribal commerce" even where the commerce takes place inside of Indian country. ).

Here again, plaintiffs are seeking "supersovereign status" – the ability to avoid state taxation and regulation of their commerce with non-Indians and members of other tribes even where that commerce travels outside of Indian country. Such an immunity, as noted by Defendants, would truly be unprecedented. *See Chickasaw Nation*, 515 U.S. at 464 ("For the exception the Tribe would carve out of the State's taxing authority, the Tribe gains no support for the rule that Indians and Indian tribes are generally immune from state taxation, ... as this principle does not operate outside Indian Country.")

### B. Irreparable Injury

Plaintiff has failed to establish an irreparable injury if the injunctive relief is not granted. An injury is irreparable when it is incapable of being fully compensated by money damages, or where the measure of damages is so speculative that arriving at an amount of damages would be difficult or impossible. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Plaintiff has not established any monetary damage which would result if injunctive relief is not granted. In fact, the Nation's Tax Commissioner, Dana Johnson, testified that (1) the Nation could collect its full tax on every pack of cigarettes sold, and (2) she could not say if the Nation would lose sales if the Nation no longer dealt in non-compliant cigarettes. Further, as noted by Defendant, the legal incidence of the tax is on the purchaser --- not the Tribe or its tribal members. *See Okla. Stat. tit. 68, §302; Washington Confederated Tribes, Colville Reservation*, 447 U.S. 134, 161 (1980).

Plaintiff also argues it suffers damage to its sovereignty as a result of SB 608's discriminatory application. Native American tribes, however, are no longer possessed of full attributes of sovereignty, only a unique and limited sovereignty, which exists at the sufferance of Congress. *U.S. v. Wheeler*, 435 U.S. 313, 322-323 (1978). The exercise of tribal power beyond that which is necessary to protect tribal self-

government, or to control internal relations is inconsistent with the dependent status of tribes, and cannot survive without express congressional delegation, *Montana v. U.S.* 450 U.S. 544, 564 (1980). Tribes possess attributes of sovereignty only over ***their members and territory***, *Merrion, et al. v. Jicarilla Apache tribe, et al.*, 617 F.2d 737 (10th Cir. 1980).[4] Tribal sovereignty does not extend beyond what is necessary to protect tribal self-government or control internal relations. *Tenenco Oil Co. v. Sac and Fox Tribe*, 725 F.2d 572, 574-575 (10th Cir. (1984).

General claims of damage to a Tribe's sovereignty in this area have already been addressed by the United States Supreme Court in *Washington Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134 (1980). The Court held that : (1) "whether stated in terms of preemption, tribal self-government, or otherwise," tribes had no sovereign right to sell an exemption from State tax to non-members, *Colville,* 447 U.S. at 155; (2) the State's tax and regulatory requirements regarding collection of its tax from non-members were not preempted because the tribe had its own tobacco regulations, *Colville*, 447 U.S. at 159; (3) the State's right to impose its excise tax on non-members and regulations reasonably necessary to the collection of such taxes did not interfere with the tribe's sovereign rights "for the simple reason that non-members are not constituents of the governing tribe," *Colville*, 447 U.S. at 161; and further, (4) upheld the State's power to make off-Indian country seizures of unstamped contraband product. *Colville,* 447 U.S. at 161-62.

In regard to the seizure of the Plaintiff's trucks, Defendants point out that Plaintiff is subject to Oklahoma laws of general application outside of its 'Indian Country.' Defendants contend that because the seizure was taken in conjunction with such laws, there is no invasion of Plaintiff's sovereignty. Defendants argue there are no sovereignty interests of the Tribe which would be damaged or affected by the OTC's enforcement, outside of Plaintiff's 'Indian Country' of an Oklahoma nondiscriminatory state law applicable

---

[4] To this end, Plaintiff has not yet established how membership in their Tribe is determined, how smokeshop retailers identify members of the Tribe for purposes of sales, whether smokeshop retailers must be members of their Tribe, and whether the smokeshops identified as Muscogee (Creek) Nation smokeshops are in fact located on "Indian Country."

to all citizens of the State. Plaintiff has made no showing that the seizure of Plaintiff's truck took place on Indian land.

The Plaintiff has failed to show irreparable harm to either its finances, or its sovereignty.

**C. Substantial Harm to Defendants**

After determining Plaintiff will suffer no harm if the injunction is not granted, the court must then weigh the harm to Defendants if the injunction is granted. *Universal Engraving, Inc. v. Duarte*, 519 F.Supp.2d 1140, 1149 (D.Kan. 2007). Plaintiff argues the requested injunction would not result in any harm to Defendants because Defendants have no right to enforce tax laws against Plaintiff. Based on the evidence presented to the court during the hearing, however, it is apparent the requested injunction would cause certain injuries to Defendants. Specifically, although Plaintiff appears to maintain it is not subject to Oklahoma's tax laws, this ultimate question is still to be determined, and the requested injunction would result in a substantial loss of tax revenue to Defendants.

Defendants presented evidence showing that in 2009, Plaintiff's evaded $12,983,636.36 in cigarette excise taxes, an average monthly revenue loss to Oklahoma of $1,447,309.65. One shipment to one of the 32 Muscogee retailers represented $45,732.00 of excise tax revenue. Annually, the State would lose nearly $13,000,000.00 in tobacco excise tax, as well as the related escrow payments. *See e.g., KT & G Corp., et al. v. Edmondson, et al.*, 535 F.3d 1114, 1121 (10th Cir. 2008)(avoidance of Oklahoma's escrow laws violates public policy). Additionally, neighboring Indian tribes' tobacco sales and tax revenue would be adversely affected. Defendants demonstrated that bordering retailers have also suffered revenue losses as a result of Plaintiff's failure to collect taxes.

Finally, Defendants introduced evidence which indicated serious health concerns for the State due to Plaintiff's failure to comply with the law. Defendants contend smoking in the State would increase, because of the relationship between price and tobacco consumption — all contrary to public health considerations. The State's annual payments under the Master Settlement Agreement of approximately

$90,000,000 would also be endangered; and the State — not the Muscogee Nation — would bear the economic burden of treating tobacco related illnesses created by increased smoking by non-tribal members. Therefore, any harm to Plaintiff can be compensated for in damages and is not outweighed by the harm that would be caused to Defendants by granting injunctive relief.

### D. Public Interest

Finally, as discussed above, the issuance of an injunction at this stage of the proceedings could damage public interest and fiscal soundness, foster usage of cigarettes, and increase health and healthcare costs. The loss of tax revenue and Master Settlement Program funds damages the public interest. Further, as demonstrated by Defendants, public health is adversely affected by the sale of "cheap" cigarettes because the price of cigarettes affects the incidence of smoking. The Court agrees with Defendants' assertion that the cost to the public health and expenditures by the public treasury, caused by health issues directly attributable to smoking, are not only large, but uncontroverted and unrebutted.

Accordingly, Plaintiff's Motion for Preliminary Injunction is denied.

**IT IS SO ORDERED this 18th day of March, 2010.**

*James H. Payne*
United States District Judge
Eastern District of Oklahoma